IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01504-RPM

MICHAEL P. MARTINEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.
_____

ORDER AFFIRMING DECISION
_____

    The application for Supplemental Security Income benefits of Michael V. Martinez was denied based on the decision of an Administrative law Judge ("ALJ") which became the final decision of the Commissioner. That decision is now under judicial review pursuant to 42 U.S.C. § 405(g).

    In his Disability Report (R. 75-82), Mr. Martinez identified diabetes as his condition limiting his ability to work and stated that his "legs get numb," high blood sugar, a lot of anxiety disorder, inflammation from the waist down and high anxiety at night. He identified his previous employment as general labor in construction with his last work as a day laborer for a temporary agency in May, 2003. In his Function Report (R. 83-90) Mr. Martinez said that he was living in a homeless shelter; that his whole body was in pain always and that he had anxiety and fears. Much of the form was left blank.

    The ALJ conducted a hearing on November 2, 2005, at which time Mr. Martinez was 48 years old. A lawyer appeared with the claimant at the hearing. The attorney

identified his client as suffering from a severe, chronic diabetes problem.  R. 239.  He identified a Residual Functional Capacity questionnaire, dated January 19, 2005, as strong evidence that the claimant could not have any type of gainful employment.  That reference was to a questionnaire completed by Dr. James Brooke, M.D., a family practice doctor at the Peak Vista Community Health Center in Colorado Springs (R. 177-182) specific for Type II Diabetes.  Dr. Brooke wrote that this patient was seen at a clinic for Type II diabetes, hypertension, pancreatic insufficiency, leg pain, neuropathy and a history of anxiety disorder.  Mr. Martinez was described as a "brittle diabetic."

Dr. Brooke testified at the ALJ hearing and said that the form was filled out at the homeless clinic and that he signed it based on information which he received from the homeless clinic and reflected the position of a physician's assistant and the patient himself.  R. 246.  Dr. Brooke went on to say that he relied on what the patient reported.  It was Dr. Brooke's testimony that he had seen Mr. Martinez three times but the doctor also said that he saw this patient more as a consultant rather than as a regular provider.  R.249.  Dr. Brooke testified that Mr. Martinez had severe neuropathy with pain and symptoms over the entire lower extremities.  R. 250.

The ALJ evaluated this claim under the five step sequential process and determined that Mr. Martinez had the residual functional capacity to perform the requirements of paramutual ticket checker, document preparer and telephone quotation clerk as described in the Dictionary of Occupational Titles, accepting the testimony of a vocational expert.

The primary claim of error in this case is the failure of the ALJ to address whether the evidence showed that Mr. Martinez's condition meets or equals Listing 9.08,

2

diabetes mellitus, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, requiring a finding of disability if there is neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross index stress movements, or gain and station. The ALJ's opinion did not address diabetes with neuropathy at Step 3. He limited the discussion to mental impairments and Listings 12.04, 12.06 and 12.08.

That failure is disturbing in that it suggests that the ALJ did not give adequate consideration to the medical records suggesting diabetic neuropathy. That analytical error is harmless because the ALJ did evaluate those records and discuss them at Steps 4 and 5.

The fundamental error claimed here is that the ALJ should have accepted Dr. Brooke's evaluation in the questionnaire and in his testimony. Dr. Brooke's opinions would support a Step 3 disability determination based on diabetic neuropathy.

The ALJ explained his rejection of Dr. Brooke's opinion. First, the ALJ found that Dr. Brooke was not a treating physician entitled to deference. There was no error in that finding. Dr. Brooke himself said so and while the doctor said he saw Mr. Martinez three times, the only report showing his actual meeting with the patient is that of a visit to the clinic on June 21, 2004. R. 138. The visit of September 21, 2004, was an evaluation by a nurse which Dr. Brooke signed off on. There is no indication of a third visit even though the doctor said he had seen this patient thee times.

The ALJ gave no weight to Dr. Brooke's functional evaluation. The ALJ relied on the opinions of Dr. Gilman, who conducted a consultative examination of this patient on June 21, 2005, and wrote a narrative report. R. 189-95. Dr. Gilman also completed a

3

Medical Assessment of Work Related Activities questionnaire form on June 30, 2005. R. 191-195. Both the narrative report and the questionnaire by Dr. Gilman provide substantial evidence to support the ALJ's findings and conclusions.

It is difficult to evaluate the condition of this claimant. He has been homeless and living on the street for much of the relevant period. There is no doubt that he has had uncontrolled diabetes and only sporadic medical care because of his lifestyle and lack of employment. While, as usual, the jobs identified by the vocational expert seem problematic, the use of the Dictionary of Occupational Titles definitions of sedentary employment are acceptable in this process.

Because the rejection of the opinions of Dr. Brooke and the credibility determinations with respect to the plaintiff's testimony concerning his limitations are well within the discretion of the ALJ and because the final determination is supported by the opinions of Dr. Gilman, it is

ORDERED that the decision is affirmed.

Dated: May 5, 2008

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge